UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN CHRISTIAN,

    Plaintiff,

-vs-

                                  Case No. 07-14482
                                  HON. AVERN COHN

WAL-MART STORES, INC., WAL-MART
ASSOCIATES, INC., BETH HARRIS,
and RICHARD MICHELS

    Defendants.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AS TO RICHARD MICHELS
## AND
## DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AS TO BETH HARRIS AND WAL-MART

### I.  INTRODUCTION

    This is an employment case.  Plaintiff Susan Christian (Christian) claims she was retaliated against for asserting rights under the Age Discrimination in Employment Act (ADEA)[1] and Michigan's Elliot Larsen Civil Rights Acts (ELCRA)[2] (collectively, the Acts) and was defamed.  Defendants are Wal-Mart, her employer, and Beth Harris (Harris) and Richard Michels (Michels), who participated in her termination.  Wal-Mart and Harris are also accused of defaming her.

    Before the Court is Defendants' Motion for Summary Judgment under Fed. R.

---

[1] 29 U.S.C. §§ 261 et seq.

[2] MCL §§ 37.2101 et seq.

1

Civ. P. 56(c). For the reasons below, Defendants' motion will be granted in part and denied in part. Because there is no evidence that Michels acted to retaliate against Christian, no reasonable jury could find Michels liable. However, the material record presents a dispute sufficient to require submission to a jury on the issues of retaliation and defamation by Harris and Wal-Mart.

## II. FACTS[3]

### A. Background

The foundation of the case is a lawsuit Christian's husband, Glen Christian (Glen), filed against Wal-Mart arising out of the termination of his employment. The lawsuit included a claim of age discrimination. Harris was involved in the termination.

### B. Christian's Employment History

In 1998, Christian began working as a Shoe Department Manager for Wal-Mart's

---

[3]The Wal-Mart dramatis personae are:

- Susan "Sue" **Christian**, Jewelry Department Manager (deposed)
- Glen Christian, Christian's husband and former Wal-Mart employee
- Jamie **Oleskie**, Christian's daughter (deposed)
- Beth **Harris**, Store Manager (deposed)
- Claude Kendrick, Co-Manager (deposed)
- Valerie Frazier, Assistant Manager (deposed)
- Richard **Michels**, regional Asset Protection Manager (deposed)
- Cindy Ewing, regional Human Resources Manager (deposed)
- Talitha **Leveque**, Shoe Department Manager (deposed)
- Amber **Egbers**, Customer Service Associate (deposed)
- Judy **Kopka**, Ladies Wear Department Manager (affidavit)
- Erica **Shelly**, Store Greeter/Cashier (affidavit)
- Jim Sheehan, regional Fashion Merchandiser
- Scott Kenney, former Store Manager

2

Commerce Township store. She later worked in several other positions and eventually became Jewelry Department Manager. In 2004, Harris took over as Store Manager. In 2006, Christian's husband Glen filed an action against Wal-Mart for wrongful termination. Christian objected, apparently vociferously, to Harris and other employees about Glen's termination. She told Harris she knew Wal-Mart terminated Glen because of an injury and because of his age and that she believed it was wrong. Christian asked Harris several times when Harris would give her deposition in Glen's case. Christian says Harris told her to "drop it, stop talking about it, or I could be next . . . [that] I would be next one out the door."

In January 2007, Assistant Manager Valerie Frazier (Frazier) conducted interviews for the position of Jewelry Department Manager. Christian was her first choice. Harris, on maternity leave, and Co-Manager Claude Kendrick (Kendrick) approved Christian for the position.

### B. Oleskie's Boot Return

On February 9, 2007, Christian's daughter Jamie Oleskie (Oleskie) went to the Commerce Township store to exchange or return a pair of children's boots. The boots did not have a UPC number, item number, or tag. Oleskie did not have a receipt. Christian and store greeter/cashier Erica Shelly (Shelly) tried to locate the right size in the same style boots or ones of equal value. Shoe Department Manager Talitha Leveque (Leveque) told Co-Manager Kendrick the boots were not a Wal-Mart item.[4]

---

[4]Shelly by affidavit, Shoe Department Manager Talitha Leveque in deposition, and Ladies Wear Department Manager Judy Kopka by affidavit said that "non-Wal-Mart" merchandise frequently ends up on the sales floor. Kopka, who has worked for Wal-Mart for over six years and is now at the Gaylord, Michigan, store, said that the Wal-

3

Shelly told Christian she recognized the boots because Oleskie had recently purchased them in Shelly's check-out line.

Customer Service Associate Amber Egbers (Egbers) says Christian told her that Leveque okayed the return. Christian says the only thing she told Egbers was, "I know she got them here," based on what Shelly had told her. Egbers issued a refund to Oleskie on a gift card in the amount of $19.96. Later in the day she contacted Co-Manager Kendrick to let him know that she had accepted the boots for return and did not realize at the time they were not a Wal-Mart item.

### C. Christian's Purchases

Christian then went shopping in the store and made two separate purchase transactions. She made the first purchase along with her daughter, Oleskie. Christian used her Wal-Mart Employee Discount Card. Oleskie offered to pay and swiped her Electronic Benefits Transfer food stamps card (EBT card) and the gift card for $19.96 that she had just received from the boot return. Christian then made a second purchase. She and Ladies Wear Department Manager Judy Kopka (Kopka), who was shopping with Christian and drove her home that day, said that all the purchases were Christian's.[5] Christian and Oleskie testified that some of the purchases were for the use

---

Mart Commerce store's policy of "the customer is always right" mandated that employees accept customer returns even without a receipt or Wal-Mart tag or identification number. She said it was therefore commonplace to find large volumes of product that were not Wal-Mart merchandise that were tagged and returned to the sales floor.

[5]When they began shopping, Kopka and Christian were sharing a cart. Kopka was closer to finishing her shopping than Christian so she offered to pick up Christian's prescription from the pharmacy while Christian finished shopping. When Kopka arrived at the checkout, Christian was already going through the line with her own cart. The

of Oleskie's children who would be visiting Christian for the weekend.

### D. The Investigation

When Kendrick learned that Egbers had accepted the boots for return, he contacted Harris. They met with Egbers. Then Harris contacted Asset Protection Manager Michels. Michels investigated by examining transaction records and store videos. The video tapes were not preserved. Michels did not talk to Shelly or Kopka.

### E. Harris Suspends Christian, Then Terminates Her

On February 20, 2007, Michels interviewed Christian while Harris observed. At the end of the interview, Christian gave two written statements. Harris then suspended her pending further investigation.

The next day, Harris and Cindy Ewing, the regional Human Resources Manager, decided to terminate Christian. Harris and Assistant Manager Frazier terminated Christian on February 22, 2007. They stated in the Exit Interview: "She used a gift card on [a] transaction that was given on a fraudulent return. Sue also used a EBT card on the same transaction that was not hers causing welfare fraud." However, Harris testified that she based her decision on Christian's authorizing a return for a family member, use of a gift card for her own personal gain on her purchase, and use of an EBT card that was not hers on her purchase.

### F. The Affidavits

Christian testified that after she was terminated, former co-workers asked her what she stole and whether she would be prosecuted.

---

prescription and a few other items of Christian's that were in Kopka's cart made up Christian's second transaction.

Kopka and Shelly have each filed an affidavit stating that Harris said Christian was terminated for engaging in employee theft. Kopka also stated that Harris told her Christian had lodged an "open door complaint" against Kopka. Christian says this was false.

Kopka also stated that she heard Harris say she was "sick and tired" of Christian's complaining about her husband's termination. Kopka also stated that a former store manager, Scott Kenney, said that Christian's termination did not surprise him "because he knew that Wal-Mart management was out to get [Christian] because her husband Glen had filed a lawsuit against the company."

Finally, Kopka stated that in the fall of 2006, Jim Sheehan, Market Fashion Merchandiser, asked if she would be interested in Ladies Wear Department Manager, the position that Christian held. She stated that later an assistant store manager asked her the same question and requested that she keep the inquiry confidential as "they were planning to get rid of Susan Christian."

### III. LEGAL STANDARD

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for

6

trial." Fed. R. Civ. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251–52).  The Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

Although "[a]ffidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded," State Mut. Life Assurance Co. of Am. v. Deer Creek Park, 612 F.2d 259, 264. (6th Cir. 1979), "on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit . . . and will consider the admissible portions."  United States v. Hodges X-Ray, Inc., 759 F.2d 557, 561 (6th Cir. 1985) (internal quotation marks omitted) (quoting Lee v. Nat'l Life

Assurance Co., 632 F.2d 524, 529 (5th Cir. 1980)).  "[A]ffidavits supporting the movant are closely examined while those of the opponents are indulgently treated."  Id. at 562.

## IV.  ANALYSIS

### A.  Personal Liability for Retaliation

Under ELCRA, an individual may be held personally liable for retaliation if the individual is an "agent" of an "employer," defined as a person who has one or more employees.  M.C.L. § 37.2201(a); Elezovic v. Ford Motor Co., 472 Mich. 408, 426 (2005).  "'Agents' are persons to whom the employing agency delegates supervisory power and authority over subordinates . . . An agent can be held directly and individually liable if he engaged in discriminatory behavior in violation of [ELCRA] while acting in his capacity as the victim's employer."  Elezovic v. Bennett, 274 Mich. App. 1,  15 (2007).

#### 1.  Michels

Michels was unaware of the lawsuit until after Christian's suspension on February 20, 2007, at which time he had already made his report.  Harris informed him of the lawsuit between February 20 and 22, 2007.  Further, nothing in the record indicates that Michels ever knew about Christian's alleged protected activity with regard to her husband's lawsuit.  Under such circumstances there is no liability on his part.

#### 2.  Harris

Harris terminated Christian's husband Glen.  Harris also was the object of Christian's complaints about Wal-Mart's age discrimination against Glen.  As discussed in IV.B. below, there is evidence Harris acted out of retaliation.

### B.  Liability of Wal-Mart and Harris for Retaliation

Christian has proffered specific facts showing that there is a genuine issue for trial on the issue of retaliation by Wal-Mart and Harris.

The elements Christian must establish for retaliation are: (1) she engaged in a protected activity under the Acts; (2) Defendants had knowledge of the protected activity; (3) Defendants took a materially adverse employment action against her; and (4) under the ADEA, there was a causal connection between the protected activity and the adverse action or, under ELCRA, the protected activity was a significant factor in the adverse action. Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 523 & n.2 (6th Cir. 2008). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." Id. (internal quotation marks omitted) (quoting Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)). Once Christian has met this burden, the burden shifts to Defendants to produce evidence of a "legitimate, nondiscriminatory reason for [their] actions." Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 544 (6th Cir. 2008). Christian must then show by a preponderance of the evidence that Defendants' proffered reason was a pretext "designed to mask retaliation." Id.

### 1. Protected Activities

Protected activities under the ADEA and ELCRA are covered by two clauses. The participation clause protects a plaintiff who has "made a charge, filed a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under the Acts. Imwalle, 515 F.3d at 543. The opposition clause protects a plaintiff who has "opposed any practice" made unlawful under the Acts. Id.

Defendants cite Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304 (6th

9

Cir. 1989), to argue that Michigan courts interpret what constitutes a protected activity under ELCRA by looking to Title VII authority. In Booker, the Sixth Circuit decided that the Civil Rights Act does not protect an employee who merely expressed concern to his employer about possible discrimination. Id. at 1313–14. But the Michigan Court of Appeals has roundly criticized Booker:

> We strongly disagree with this interpretation of the act. Regardless of the vagueness of the charge or the lack of formal invocation of the protection of the act, if an employer's decision to terminate or otherwise adversely effect [sic] an employee is a result of that employee raising the spectre of a discrimination complaint, retaliation prohibited by the act occurs. We will not interpret the act to allow employers to peremptorily retaliate against employees with impunity. Doing so would be contrary to our state's policy of protecting employees who are about to report a suspected violation of law.

McLemore v. Detroit Receiving Hosp. & Univ. Med. Ctr., 196 Mich. App. 391, 396 (1992).

### a. The Participation Clause

Because the ADEA is "broad, remedial legislation . . . its provisions should be liberally construed to effectuate the underlying policies of the act." DePriest v. Seaway Food Town, Inc., 543 F. Supp. 1355, 1358 (E.D. Mich. 1982).

Defendants offer no authority to support their assertion that Christian is not protected by the participation clause because she did not file an EEOC charge before she was terminated. Courts have applied the clause broadly to include persons who are simply witnesses in a case, e.g., Oldham v. West, 47 F.3d 985 (8th Cir. 1995); EEOC v. Locals 14 & 15, Int'l Union of Operating Engineers, 438 F. Supp. 876 (S.D.N.Y. 1977), as well as to those who are no more than potential witnesses, e.g., EEOC v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus.

Local 189, 311 F. Supp. 464 (S.D. Ohio 1970).

There are at least three material facts that would support a conclusion that Christian participated in her husband's case: (1) she was listed as a witness in the Rule 26 initial disclosures in her husband's case; (2) multiple answers to Wal-Mart's first set of interrogatories identified Christian as an employee of Wal-Mart upon whom her husband would rely on substantiating his claims, including those for damages; and (3) Christian asked Harris on multiple occasions when Harris was going to give her deposition in Glen Christian's case, which can arguably be viewed as assisting in litigation.

### b. The Opposition Clause

The United States Supreme Court recently held that an employee who had not instigated or initiated a complaint was nevertheless protected by the opposition clause after she responded affirmatively to queries by a human resources officer as to whether she had witnessed sexually harassing behavior by an employee relations director who was already under investigation. Crawford v. Metro. Gov't of Nashville & Davidson Co., No. 06-1595, 2009 WL 160424, *2–3 (U.S. Jan. 26, 2009). "'When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's *opposition* to the activity.'" Id. at *3 (quoting Brief for the United States as *Amicus Curiae* 9) (going on to note that one can imagine "eccentric" exceptions). The opposition clause protects persons who have "complain[ed] to anyone . . . about allegedly unlawful practices" in a reasonable manner. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 579–80 (6th Cir. 2000).

Defendants rely on Fox v. Eagle Dist. Co., 510 F.3d 587 (6th Cir. 2007) and Sawicki v. Am. Plastic Toys, Inc., 180 F. Supp. 2d 910 (E.D. Mich. 2001). But neither of those plaintiffs ever told management that s/he thought someone had been discriminated against or that a protected category, such as age, was involved.

In contrast, Christian stated to Harris that Glen's termination was wrong, that it was due to his age, and that Wal-Mart "totally discriminated against him." Harris made the decision to terminate Glen. Christian was complaining directly to the person who terminated her husband and specifically said that the termination was due to age discrimination. This was open, active, and clear opposition, beyond what the Supreme Court requires. The facts create a material factual dispute as to whether or not Christian would be covered by the opposition clause.[6]

### 2. Causal Connection

A causal connection can exist between the protected activity and termination even if the time span is more than one year. Harrison v. Metro Gov't of Nashville, 80 F.3d 1107, 1119 (6th Cir. 1996) (rejecting argument that a causal connection cannot exist with a time span of fifteen months), *abrogated on other grounds by* Jackson v. Quanex Corp., 191 F.3d 647, 667 n.6 (6th Cir. 1999).

The Eighth Circuit has held in an ADEA retaliation case that statements made

---

[6]The Court also notes that the Sixth Circuit has held that a person claiming retaliation is protected by the purview of Title VII where that person "is so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights." Johnson, 215 F.3d at 580. "[I]f an employer retaliated against a close relative of the person engaging in protected activity, the relative may also bring a claim" under the applicable statute. EEOC v. Ohio Edison Co., 7 F.3d 541, 543 (6th Cir. 1993). Defendants have not argued that Christian is not protected on basis of these two authorities.

*even by a managerial non-decision maker* may be used to establish a causal link.  In Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444 (8th Cir. 1997), a statement made to a third party indicating that the plaintiff was terminated "because of a litigation that he is involved in," created a sufficient issue of material fact with regard to the causal link.  Id. at 450, 455–56.

      The time span here is eight months, well within the Sixth Circuit's jurisprudence.

      Defendants say that Harris's conduct belies any retaliatory motive: she approved Christian for a hardship loan and for a lateral "promotion" to the Jewelry Department Manager.  But Harris approved the hardship loan in May of 2006 and was not notified of Christian's husband's lawsuit until sometime after it had been filed in June of 2006.

      Defendants also say that Harris was not knowledgeable about the nature of Glen's suit.  But a jury could find that this assertion defies logic.  Wal-Mart listed Harris as a primary witness and the main decision maker on Glen's termination.

      Finally, Defendants cite Dixon v. Gonzales, 481 F.3d 324, 328–29 (6th Cir. 2007), in which the FBI turned down an agent's application for reinstatement following his resignation.  Some of the reasons for the decision were that the agent had admitted to changing an applicant's score and he reportedly had "poor work habits, a poor work ethic, and little enthusiasm for his job during his early years with the FBI."  Id. at 329.

      In contrast to Dixon, Christian appears to have had a good work history over several years.  Moreover, she testified that Harris told her to "drop it, stop talking about it, or I could be next . . . [that] I would be next one out the door."  Kopka said she heard Harris say she was "sick and tired" of Christian's complaints.

      Defendants argue Harris's statements are in line with Wal-Mart's policies

13

prohibiting management from discussing terminations with other employees. Wal-Mart's policies sound reasonable, even necessary, but they do not refute the possibility of a juror's reasonably inferring from Harris's remarks to Christian and Kopka that Harris sought to retaliate against Christian.

### 3. Pretext

#### a.

In order for Harris's belief in her reasons for terminating Christian to be considered "honestly held," she must establish "reasonable reliance" on "particularized facts that were before [her]" at the time she made the decision. Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998). But the protections afforded by the "reasonable reliance" rule are "not automatic." Id. Christian may show "proof to the contrary." Id. And though courts should not require employers leave "no stone unturned" in decision making, "neither should they blindly assume that an employer's description of its reasons is honest." Id. If a genuine issue of fact exists as to whether Harris had a reasonable basis to believe the asserted reasons for termination, summary judgment is not appropriate. EEOC v. Int'l House of Pancakes, 411 F. Supp. 2d 709, 716–17 (E.D. Mich. 2006).

Contradictions or inconsistencies in an employer's explanations for termination can support a finding of pretext. See, e.g., Payne v. Nw. Corp., 113 F.3d 1079, 1080 (9th Cir. 1997) (Where a defendant presents "fundamentally different justifications" for the reasons for termination, such differences give rise to a genuine issue of fact with regard to pretext "since they suggest the possibility that neither of the official reasons was the true reason."); Rudd v. Burlington Coat Factory Warehouse of Colo., Inc., 388

F. Supp. 2d 1201, 1206 (D. Colo. 2005) ("The text of [defendant's] policy and its application in practice diverged. It remains for a jury to decide whether that divergence served [plaintiff's] retaliatory dismissal.").

Sufficient inconsistencies in Wal-Mart's explanations for Christian's termination and other material facts exist from which a reasonable person could conclude that Harris did not honestly believe the reasons she cited for terminating Christian.

Harris said in deposition that she terminated Christian specifically because Christian (1) "used a gift card on transaction that was given on a fraudulent return" and (2) used an EBT card that was not hers on the same transaction "causing welfare fraud." Harris confirmed that there were "no other reasons for her termination." These were also the sole reasons listed on Christian's Exit Interview.

**b.**

The following facts are material evidence on which a jury could rely in finding Harris's reasons were pretext:

(1) Harris was aware of Shelly as an exculpatory witness because of Christian's written statement that "Erica said she remembered Jamie coming through her line [to purchase the boots]." Yet Harris did not query Shelly about the matter.

(2) Three employees said that non-Wal-Mart merchandise was put on the floor.[7]

(3) Egbers said Christian did not coerce or order her to accept the return. Christian testified that all she said to Egbers was, "I know she got them here."

(4) Egbers testified that when a gift card is issued, it is just like cash. The

---

[7] Supra note 4.

recipient of the gift card can give it to another person to use.

(5) In her written statement, Christian said that Oleskie swiped "her card." There is no indication that Christian was aware that Oleskie was swiping an EBT card.

(6) Harris did not report "welfare fraud" by anyone to the government.

(7) Christian worked at the Commerce Township store for more than eight years, apparently without any previous "issues of integrity." Frazier, Harris, and Kendrick trusted her enough to put her in charge of the high-shrinkage Jewelry Department.

(8) The amount of the EBT card purchase was $61.45. The amount of the employee-discounted purchase was $92.68. But the only loss that appeared in the AP Report was $19.96— the amount of the refund for the boots. The AP Report listed "either fraud or discount abuse" but there is no evidence that Harris pursued the inquiry to determine which, if either, was involved. The AP Report said that Christian was not prosecuted because the dollar loss was under $25.00. There is no evidence that Harris actually thought the loss to Wal-Mart was greater than $19.96.

Defendants now say that Christian was terminated for "multiple violations of company policies involving integrity and dishonesty." They contend the use of Christian's employee discount card was also a reason for her termination and additionally reference the second purchase made by Christian in support of the circumstances leading to Christian's termination. But Harris has never cited use of the employee discount card and she testified that the second purchase had nothing to do with her decision. She also testified that if all of the purchases went to Christian's home, they were eligible for the employee discount. Christian's uncontested testimony, supported by Kopka's affidavit, is that all of the purchases made by Christian went to

16

her home.

A genuine issue of material fact exists as to whether Harris honestly believed the reasons she gave for Christian's termination.

### C.  Defamation by Harris

Christian has proffered specific facts showing that there is a genuine issue for trial on the issue of defamation by Harris and Wal-Mart.[8]

A defamatory statement "tends to so harm the reputation of persons so as to lower them in the estimation of the community or to deter others from associating or dealing with them." Hawkins v. Mercy Health Servs., Inc., 230 Mich. App. 315, 324 (1998). At common law and under M.C.L. §§ 600.2911 et seq., "words charging the commission of a crime are defamatory per se." Burden v. Elias Brothers Big Boy Restaurants, 240 Mich. App. 723, 727–28 (2000); see Jones v. Sears, Roebuck & Co., 459 F.2d 584, 587 (6th Cir. 1972) ("The settled rule in Michigan . . . is that charges of theft if false are per se actionable.").

There is evidence that Harris made two defamatory statements: (1) Christian filed an open door complaint against Kopka and (2) Christian was terminated for theft. A false statement that Christian made a complaint against Kopka would have the effect of deterring Kopka from associating or dealing with Christian. See Hawkins, 230 Mich.

---

[8]In Michigan, a corporation may be held liable to the same extent as an individual for defamation by its agent acting in the discharge of his duty in relation to matters within the scope of his authority. E.g., Grist v. Upjohn Co., 368 Mich. 578, 583 (1962) (applying the rule of Poledna v. Bendix Aviation Corp., 360 Mich. 129 (1960)); see Stencel v. Augat Wiring Sys., 173 F. Supp. 2d 669, 680–81 (E.D. Mich. 2001) (applying Michigan law as stated in Linebaugh v. Sheraton Mich. Corp., 198 Mich. App. 335, 341 (1993)).

App. at 324. Kopka's affidavit states her impression that Harris "lied about [the complaint] in an effort to prevent [her] from communicating with [Christian]." And if Kopka's and Shelly's statements that Harris told them Christian was a thief are proven, this would constitute defamation per se.

Defendants say that the affidavits of Kopka and Shelly directly contradict Christian's deposition testimony and must be disregarded. But in each of the cases Defendants cite, the affidavit contained statements contradicting *the affiant's own earlier testimony*. Moreover, here the affidavits confirm rather than contradict Christian's prior testimony. Christian testified she did not specifically know of any defamatory statements but she believed someone had made such statements because former co-workers were asking what she stole. Kopka and Shelly gave their affidavits after her deposition.[9]

Based on the above, there is a legitimate issue of material fact as to whether Harris published defamatory statements about Christian.

### III. CONCLUSION

For all of the above reasons, the Court GRANTS the Motion for Summary Judgment as to Michel's individual liability under ELCRA. The Court DENIES the

---

[9]In general, Defendants say that the affidavits contain hearsay and opinion evidence that is not admissible and may not be considered in this motion. They identify paragraphs they find problematic but do not give specific reasons for inadmissibility of each specific paragraph. Christian says most of the identified statements qualify as admissions or contain opinions that would be admissible under Fed. R. Evid. 701 permitting non-expert opinion testimony by lay witnesses. As the court in Kehoe v. Anheuser-Bush, Inc., 995 F.2d 117, 119 n.3 (8th Cir. 1993), observed, "If the affiants have 'personal knowledge,' Fed. R. Civ. P. 56(e), there is no reason why they should not be permitted to summarize their impressions."

Motion as to Harris and Wal-Mart for retaliation and defamation. The Court DISMISSES WITH PREJUDICE the counts of age discrimination, associational age discrimination, IIED, and individual liability of Harris and Michels under ADEA.[10]

SO ORDERED.

        s/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: February 10, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 10, 2009, by electronic and/or ordinary mail.

        s/Julie Owens
        Case Manager, (313) 234-5160

---

[10] Christian has voluntarily dismissed these claims.